# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY H. STERLING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 04cv1470 |
| | ) | |
| McKESSON AUTOMATION, INC., | ) | |
| McKESSON CORPORATION, JIM | ) | |
| STRINGER, RYAN PAYNE, KAREN | ) | |
| BOJARSKI, CHRISTIAN KEBEKUS, AND | ) | |
| PHIL SPANO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

September 26, 2006

Presently before the Court is the MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by Defendants McKesson Automation, Inc., McKesson Corporation, Jim Stringer, Ryan Payne, Karen Bojarski, Christian Kebekus, and Phil Spano *(Document Nos. 18 and 19)*, the BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT filed by Plaintiff, Timothy H. Sterling *(Document No. 28)*, and the REPLY BRIEF filed by Defendants (*Document No. 32).*

The issues have been fully briefed and the matter is ripe for disposition. After a careful consideration of the motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Court finds that there is not sufficient record evidence upon which a reasonable jury could return a verdict for Plaintiff, Timothy H. Sterling, on his claims of disability and age discrimination and retaliation. Therefore, the Court will grant the Defendants' motion for summary judgment in its entirety.

**PROCEDURAL BACKGROUND**

Plaintiff, Timothy H. Sterling ("Plaintiff") brought this lawsuit on September 23, 2004, by the filing of a three-count Complaint against his employer, McKesson Automation, Inc., and McKesson Corporation[1] (collectively referred to as "McKesson"), and McKesson employees, Jim Stringer ("Stringer"), Ryan Payne ("Payne"), Karen Bojarski ("Bojarksi"), Christian Kebekus ("Kebekus"), and Phil Spano ("Spano"), in which he alleges that he was discriminated against because of his disability (epilepsy) and age and then retaliated against for having opposed those discriminatory actions.[2]

In Counts I and II of his complaint, Plaintiff broadly alleges discrimination against all defendants under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et. seq*., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951-963 .[3]  In Count III of the Complaint, Plaintiff broadly alleges a claim of "aiding and abetting employment discrimination" under the PHRA against the individual named defendants, 43 P.S. § 955(e).

---

[1]     McKesson Corporation is the parent corporation of McKesson Automation, Inc.

[2]     The Complaint also states that "[t]his action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1991 . . . ."  However, Plaintiff has not alleged any unlawful conduct based on his race, color, religion, sex or national origin. Accordingly, the Court finds that no Title VII claim is present in this matter.

[3]     In Counts I and II, Plaintiff asserts that the claims are directed to all defendants, including the individual named defendants.  However, individuals may not be held personally liable under the ADA and ADEA and may only be held personally liable under the PHRA pursuant to an "aid and abet" claim, such as Plaintiff has alleged in Count III.

Defendants have filed the instant motion for summary judgment in which they contend that Plaintiff is unable to establish a *prima facie* case of discrimination under either the ADA, ADEA, or PHRA.  In the alternative, McKesson contends that assuming *arguendo* that Plaintiff could state a *prima facie* case under the ADEA, summary judgment should still be granted in its favor because there is no evidence that McKesson's articulated legitimate, non-discriminatory and non-retaliatory reason for placing him on a Performance Improvement Plan ("PIP") (i.e., poor work performance) was false and/or that Plaintiff's "age" was the real reason for placing him on a PIP.

**BACKGROUND**

As the law requires, all disputed facts and inferences are resolved most favorable to the Plaintiff.

*History of Epilepsy*

At the age of 17, Plaintiff was diagnosed with nocturnal seizure disorder, commonly known as epilepsy.  Since that time, Plaintiff has almost continuously taken phenobarbital and continues to take it daily.  At age 26, Plaintiff had a grand mal seizure when he had not taken phenobarbital for about a year.  Since that time, Plaintiff has not been off phenobarbital and has not suffered another grand mal seizure.  Plaintiff's epilepsy causes him to suffer mini mal seizures that he describes as episodes of spasmodic jerking that sometimes evolve into stuttering and stammering.

*Employment at McKesson*

Plaintiff has been employed by McKesson since December 2000, when he was hired as a Senior Software Development Engineer in its AcuScan-Rx (now Admin-Rx) group in Pittsburgh.  At the time he was hired, Plaintiff was 43 years old and was the oldest developer in the group.

In April 2001, Plaintiff's supervisor, Karen Bojarski ("Bojarski") directed a co-employee, Ryan Payne ("Payne"), to conduct a non-traditional code review/critique of Plaintiff's work.  Payne prepared a written, severely critical review without Plaintiff's input.  Payne's review was given to Bojarski, who in turn gave it to her supervisor, Phil Spano ("Spano").

In September 2002, Plaintiff applied for the position of Project Manager within McKesson, a position which would have been a promotion.  On October 8, 2002, Plaintiff was advised that he had not been selected for the Project Manager position.  McKesson continues to employ Plaintiff as a Senior Software Development Engineer, the position into which he was hired in 2000.

Plaintiff contends that over the next three years he experienced an "escalating environment of harassment, hostility and disparate treatment."  *Pl's Br. at 2.*  According to Plaintiff, his performance evaluations were artificially low.  The younger developers were provided with far more opportunities to learn new skills, receive new training and participate in group design meetings, from which Plaintiff was excluded.

In March 2004, Plaintiff was placed on a 60-day performance improvement plan ("PIP") that was to be effective from March 16 through May 16, 2004.  The parties are in

4

disagreement as to the reason Plaintiff was placed on the PIP, *to wit:*  Plaintiff contends that he was placed on the PIP because of his disability and age.  Defendants contend that Plaintiff was placed on the PIP because his performance needed to improve.

From April 23, 2004, until January 5, 2005,  Plaintiff took a leave of absence from work due to severe depression, stress, and anxiety.   On April 29, 2004, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") in which he alleged discrimination and harassment based upon age and disability/perceived disability and unlawful retaliation.

On March 7, 2005, after Plaintiff had returned from his leave of absence, he was placed on a second PIP that was a continuation of the PIP he began in March 2004, but had not been completed.  Plaintiff was not given any credit for the first 30 days he had served on his first PIP in 2004.   Neither PIP on which Plaintiff was placed involved being placed on probation; rather, they were considered a temporary, constructive measure to aid Plaintiff in improving his performance.   Plaintiff completed the second PIP effective June 3, 2005.

Plaintiff contends that his job duties drastically changed when he returned to work following his leave of absence.  For example, instead of writing code as a Senior Software Development Engineer, he is now performing quality assurance tasks, effectively being demoted to a Quality Assurance Analyst.  It is undisputed, however, that Plaintiff has suffered no decrease in salary but rather his salary has increased during his employment.

McKesson has adopted an anti-harassment policy, as set forth in its employee handbook, which provides that harassment in any form is strictly prohibited, directs any employee who feels he or she is being harassed to speak up to the harasser and to McKesson,

and to immediately report the incident to his or her manager, any other manager or to the Human Resources department, and prohibits retaliation for such conduct.  If an employee reports harassment, the policy provides that McKesson "will conduct a thorough and objective investigation of the incident or incidents."

Plaintiff received a copy of McKesson's employee handbook in September 2002. Plaintiff testified that he could not recall complaining to Bojarski, when she was his supervisor, that he was being treated badly because of his age or epilepsy.  Additionally, Plaintiff testified that he never complained to anyone in Human Resources that he was being subjected to discrimination based on his epilepsy.[4]

*Individual Named Defendants*

Jim Stringer ("Stringer") has been a co-worker of Plaintiff's since 2000, when Plaintiff was hired by McKesson.  Stringer has held the positions of junior developer, senior developer, and lead developer.  He has never supervised Plaintiff and has not been part of management.

Ryan Payne ("Payne") was hired by McKesson as a Software Development Engineer in the AcuScan group in April 1999, and resigned from McKesson in March 2005.  Payne never supervised Plaintiff.

Bojarski was Plaintiff's supervisor when he was hired, but ceased being his supervisor sometime between December 2001 and February 2002.  In February 2002, Bojarski

---

[4]      According to Plaintiff, he had planned to go to Human Resources before he was put on PIP, but since Human Resources condoned that action, he did not feel that Human Resources was an avenue for his complaints about discrimination.

became a Lead Developer Software Engineer and continues to hold that title.  She did not retain any supervisory authority over Plaintiff when she became a Lead Developer Software Engineer.

Christian Kebekus ("Kebekus") became Plaintiff's supervisor in February 2002, when he was hired by McKesson as the Manager, Software Development (Admin-Rx). Kebekus remained Plaintiff's supervisor until Kebekus resigned from McKesson in late January 2005.

Phil Spano ("Spano") is Vice President of Software Development and Product Support and during all relevant times has been Plaintiff's "boss' boss."

**STANDARD OF REVIEW**

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).  The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion.  *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249).  Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  *Id.* (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Distilled to its essence, the

summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

With respect to summary judgment in discrimination cases, the Court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987).

### DISCUSSION

A.      *Disability and Harassment Claims Brought Under the ADA and PHRA*[5]

The ADA provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, . . . and other terms, conditions and privileges of employment." *42 U.S.C. § 12112(a)*.  To establish a *prima facie* case of disability discrimination under the ADA, Plaintiff must establish that he:  (1) has a disability within the meaning of the ADA; (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) was subject to some adverse action as a result of his disability.  *Burskirk v. Apollo Metals*, 307 F.3d

---

[5]      The PHRA is interpreted in the same manner as the ADA, so the analysis of Plaintiff's claim(s) under the ADA applies equally to the Plaintiff's claims under the PHRA.  *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999); *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir.1996).

160 (3d Cir. 2002).  Defendants argue that Plaintiff is unable to establish a *prima facie* case of disability discrimination and, therefore, they are entitled to summary judgment.

The ADA defines "disability" as a "physical or mental impairment that substantially limits one or more of the major life activities of [the] individual."  *42 U.S.C. § 12102(2)(A).* [6] Under EEOC regulations, an individual is "substantially limited" in a major life activity if he or she cannot perform the activity, or is significantly restricted as to the condition, manner or duration of the activity when compared with the average person in the general population.  *29 C.F.R § 1630.2(j)(1); Toyota Motor Mfg. v. Williams,* 534 U.S. 184, 196 (2002).

In "regarded as" cases, the employer must perceive the individual as having an actual disability under the ADA.  *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999).

The EEOC's regulations list examples of major life activities, i.e., caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, and working.  *29 C.F.R. § 1630.2(i)*.   Thinking and concentrating are also considered major life activities.  *See Taylor*, 184 F.3d at 307.  Defendants contend that Plaintiff's epilepsy is not a disability because it is not an impairment that substantially limits him in a major life activity.

In response, Plaintiff contends that his epilepsy "affects" his ability to speak, think, make oral presentations, and causes him to stutter and stammer.  *Pl's Br. at 8-9.*  However, Plaintiff points to no evidence which demonstrates that he is substantially limited in these areas.

---

[6]      For the purpose of this Memorandum Opinion, the Court will assume that epilepsy is an impairment.  Therefore, the analysis will address the issue of whether Plaintiff's impairment, i.e., epilepsy, substantially limits him in one or more major life activities.

In fact, Plaintiff testified that his spasmodic jerking episodes do not preclude him from thinking or concentrating. *Pl's Depo. at 48.* While Plaintiff testified that a psychological test administered in 2004 indicated his epilepsy may have diminished his ability to think, the summary judgment record does not reflect this to be the case.

In October 2004, James W. Baird, Ph.D., conducted a neuropsychological evaluation on Plaintiff "to assess the nature and extent of possible cognitive deficit along with relevant psychiatric variables." *Baird Depo.*, at 5-6. In a written report, Dr. Baird concluded that Plaintiff has suffered "very mild relative cognitive deficits" that were "secondary to 1 or more of the following factors: Seizure disorder; post concussion syndrome (loss of consciousness during whiplash injury in a motor vehicle accident), 6-hour general anesthesia surgery for ruptured appendix; and moderate clinical depression." Dr. Baird further concluded that Plaintiff had "no obvious neuropsychological contraindications to return to work in field in which he had performed well for 5 years." Lastly, Dr. Baird opined that any slowing of Plaintiff's cognitive function "may be considered to be secondary to a psychiatric condition." *Baird Depo, at 5-6.*

Based on the summary judgment evidentiary record, the Court finds and rules that Plaintiff cannot establish that his epilepsy substantially limits his ability to think and/or concentrate.

The summary judgment record also establishes that Plaintiff is not substantially limited in other major life activities, such as hearing, communicating, learning, breathing, sleeping, performing manual tasks or caring for himself. Plaintiff testified that his epilepsy does not affect his ability to breathe, to perform manual tasks like digging with a shovel, tying

his shoes or carrying groceries, or to care for himself in terms of personal hygiene.  *Pl's Depo. at 13, 16-18, 21.*

Plaintiff also testified that his epilepsy causes him to stutter and stammer when he is having an episode of spasmodic jerking, but it does not preclude him from talking, speaking, or communicating.  Rather, Plaintiff testified that his episodes of spasmodic jerking affect his ability to communicate as clearly and as quickly as he would like.  *Pl's Depo. at 37-38, 42.*

Plaintiff claims that members of the AcuSan group such as Payne, Stringer, and Bojarski would grin, giggle, snicker or laugh or engage in smirking, side looks "and stuff like that" when Plaintiff would have an episode of spasmodic jerking.  However, the summary judgment record evidence reflects that Plaintiff's episodes of spasmodic jerking are not noticeable to others.  For example, Stringer testified that he did not know that Plaintiff had epilepsy until Plaintiff's leave of absence; that he could not recall Plaintiff having any difficulty in oral presentations at meetings with respect to stuttering or stammering; and that he had never seen Plaintiff have a seizure (described as uncontrolled movement of the head or hands or small twitches or anything like that) at work.  *Stringer's Depo. at 25, 29.*

Payne testified that he did not learn that Plaintiff had epilepsy until after Plaintiff had filed this lawsuit; that he did not recall Plaintiff stammering or stuttering when he was trying to make a presentation; and that he did not recall Plaintiff stammering, being distant, or losing his train of thought any more than anybody else when giving a presentation in front of a group.  *Payne Depo., at 41-41, 45, 54.*

Bojarski testified that she did not know that Plaintiff had epilepsy until after he initiated this lawsuit;[7] she had never noticed Plaintiff having a minor seizure (described as uncontrolled  or involuntary jerking or movements of his head or hands); and when they worked together she did not notice Plaintiff having trouble focusing on the task or having communication problems. *Bojarski Depo. at 29, 62, 93.*

Kebekus testified that he did not know that Plaintiff had epilepsy until after Plaintiff's leave of absence began in April 2004; and that he never observed Plaintiff having any difficulty in making an oral presentation or oral explanation to a group of McKesson personnel. *Kebekus Depo. at 42, 120-21.*  Plaintiff admitted in his deposition that he never had a conversation with Kebekus in which either of them referenced the fact that Plaintiff had epilepsy. *Pl's Depo. at 99.*

Lastly, Spano testified that before Plaintiff's leave of absence, he did not know that Plaintiff was having any problems with respect to focus, communications, and stuttering, or stammering. *Spano Depo. at 31.*   Plaintiff claims that he told Spano that he had epilepsy, but that his epilepsy was never again the subject of conversation between them because he was uncomfortable talking about it.

Finally, the record reflects that Plaintiff is not substantially limited in the major life activity of working.  By his own admission, despite being an epileptic, Plaintiff has held a variety of responsible jobs and believes his epilepsy has not limited his ability to do responsible work. *Pl's Depo. at 47.*

---

[7]     Plaintiff claims that he told Bojarski that he had epilepsy, but that his epilepsy was never again the subject of conversation between them because he was uncomfortable talking about it.

Overall, aside from his mere speculation and conclusory allegations, Plaintiff has not provided any competent evidence that could lead a reasonable factfinder to believe that Plaintiff's epilepsy substantially limits him in one or more major life activities or that Defendants perceived him has as having an actual disability under the ADA.  Accordingly, the Court finds that Plaintiff has failed to adduce evidence to demonstrate the necessary first prong of his *prima facie* disability discrimination case and, thus, summary judgment in Defendants' favor is appropriate on Plaintiff's claims of disability discrimination.

Counts I and II of Plaintiff's Complaint also appear to allege harassment based on disability.  To date, the United States Court of Appeals for the Third Circuit has not recognized a claim for harassment under the ADA.  *See Walton v. Mental Health Assoc. of Southeastern Pa.*, 168 F.3d 661, 666-67 (3d Cir. 1999).  However, assuming that such a claim exists, the Court finds that Plaintiff would not be able to establish a *prima facie* case of disability harassment.

In order to establish his *prima facie* case, Plaintiff would be required to show that (i) he is a qualified individual with a disability under the ADA; (ii) he was subject to unwelcome harassment; (iii) the harassment was based on his disability or request for accommodation; (iv) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment; and (v) that McKesson knew or should have known of the harassment and failed to take prompt remedial action.  *Walton,* 168  F.3d at 667.  For the reasons discussed at length in this Memorandum Opinion, the Court has found that Plaintiff is not a "qualified individual with a disability under the ADA."  Accordingly, he would

13

not be able to satisfy the first prong of the *prima facie* case for alleged harassment based on disability.

B.        *Age Discrimination and Harassment Claims Brought Under the ADEA and PHRA* [8]

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  The protection against age discrimination in the ADEA is "limited to individuals who are at least 40 years of age." *Id.* § 631(a).

To survive a motion for summary judgment in an ADEA case, a plaintiff must first establish a *prima facie* case of age discrimination.  *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc).  The elements of a *prima facie* case of age discrimination are: (1) the plaintiff is over 40 years of age; (2) the plaintiff is qualified for the position in question; (3) the plaintiff suffered an adverse employment decision; and (4) non-members of the protected class were treated more favorably. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir.1995).

Plaintiff was 43 when he was hired by McKesson and 46 when he was placed on a PIP in March 2004.  Plaintiff claims that his placement on a PIP was age discrimination.

For purposes of this decision, the Court will assume that Plaintiff has met his *prima*

---

[8]        The analysis of Plaintiff's claim(s) under the ADEA applies equally to the Plaintiff's claims under the PHRA because provisions of these statutes do not differ in the context of this case. *Fogleman v. Mercy Hospital, Inc.,* 283 F.3d 561, 567 (3d Cir. 2002).

*facie* case.  Therefore, the burden shifts to McKesson to articulate some legitimate, nondiscriminatory reason for its decision.  McKesson contends that Plaintiff was put on a PIP because his work performance was poor.   For example, Plaintiff's performance evaluations for the three years before the PIP had rated him at less than fully meeting expectations.

Because McKesson has articulated a legitimate, non-discriminatory reason for placing Plaintiff on a PIP, the onus shifts back to Plaintiff to show, by a preponderance of the evidence, that Defendant's stated explanation is pretextual.  *Fuentes*, 32 F.3d at 763.  In order to discredit McKesson's articulated reason, Plaintiff need not produce evidence that necessarily leads to the conclusion that his employer acted for a discriminatory reason.  *See Keller v. Orix Credit Alliance, Inc*., 130 F.3d 1101, 1108-09 (3d Cir. 1997) ("The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination").  Plaintiff may survive summary judgment by submitting evidence from which a factfinder could reasonably either: (1) disbelieve the employer's articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions. *See Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).  Specifically, Plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence," and hence infer that the employer did not act for the asserted non-discriminatory reasons. *Fuentes,* 32 F.3d at 765.

Plaintiff contends that Spano made several age-based remarks that allegedly demonstrate McKesson's age bias towards him.  First, Plaintiff claims that Spano referenced

Plaintiff's age when the two were at a customer site in 2002, almost two years prior to Plaintiff initially being placed on a PIP.  At that time, Spano allegedly "explained to [Plaintiff] that the group was a young group, he just started throwing out ages, Ryan was how old and I forget, he was in the  mid 20s then, Jim was in his early 30s and Karen was in her early 30s, I think I am not sure.  He asked how old I was.  He said something about see, we have a good cross-section.  Good age group."  *P's Depo. at 61, 102*

Also, Plaintiff claims that in February 2005, he and Spano were "having a meeting and [Spano] was talking about new technology.  He was talking about the fact that he expects people to come up with a lot of new ideas.  That he has a pretty young and vibrant group, and by the way, how old are you again?  I was 47.  He just nodded."  *Pl's Depo. at 103.*

For such comments to be probative, they must at least be attributable to someone in a decisionmaking capacity and be direct and unambiguous, allowing a reasonable jury to conclude that age was an impermissible factor in the decision to place Plaintiff on a PIP.  *See Ezold v. Wolf, Black, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given weight, particularly if they were made temporally remote from the date of decision.")

The undisputed record reflects that the decision to place Plaintiff on a PIP was made by Kebekus.  *Depo. of Kebekus, at 91.*  Furthermore, the Court finds and rules that Spano's two remarks are not "direct and unambiguous" evidence of age discrimination, but rather reflect no animus or bias against older employees.

Plaintiff also claims that he was the oldest developer and was placed on a PIP, "something that did not happen to any younger developers." *Pl's Br. at 12.*   However, Plaintiff

16

neither identifies a younger, similarly-situated employee who was treated more favorably than him nor does he reference any other evidence which would imply that he was placed on a PIP because of his age.  In fact, the summary judgment record reflects that in 2004 and 2005, nine other employees of McKesson were on PIPs, including seven who were younger than Plaintiff, and of those seven, five were six or more years younger than Plaintiff.  *See Affidavit of Conor Tobin at ¶ 6.*

While Plaintiff baldly alleges that McKesson's actions were pretextual, the Court finds that the record is completely devoid of any evidence of pretext.   After careful review of the record, this Court concludes that Plaintiff has presented no evidence to create a genuine issue of material fact regarding the credibility of McKesson's legitimate non-discriminatory reasons for placing Plaintiff on a PIP nor has Plaintiff presented evidence suggesting inconsistency, contradictions, incoherencies, or implausibilities in McKesson's proffered reason for placing Plaintiff on a PIP.

The Court has not found any evidence of record to support an inference of age discrimination. For all the foregoing reasons, the Court finds that Defendants are entitled to summary judgment because Plaintiff has not produced adequate evidence from which a reasonable factfinder could conclude that McKesson's legitimate business reason was pretext or that its real motivation was discriminatory animus on the basis of age.

Counts I and II of Plaintiff's Complaint also appear to allege harassment based on age.  To date, the United States Court of Appeals for the Third Circuit has not  addressed whether a harassment cause of action is available under the ADEA.  *See Tumolo v. Triangle Pacific Corp.*, 46 F. Supp. 2d 410, 412 n.2 (E.D. Pa. 1999).  However, if such a cause of action

existed, it would be analyzed under the same framework as that applied to Title VII claims, to

wit:  Plaintiff would need to show that  (i) he suffered intentional discrimination because of his

age; (ii) the discrimination was severe or pervasive;[9] (iii)  the discrimination detrimentally

affected the him, (iv) the discrimination would have detrimentally affected a reasonable person

in like circumstances; and (v) a basis for employer liability is present.  *Jenson v. Potter,* 434

F.3d 444, 449 (3d Cir. 2006).   The Court finds that Spano's two isolated remarks are not

sufficient to support a finding of an objectively hostile work environment.


C.      *Retaliation Claims Under the ADA, ADEA, and PHRA*

        The ADA prohibits discrimination "against any individual because such individual

has opposed any act or practice made unlawful by [the ADA] or because such individual made

a charge, testified, assisted or participated in any manner in . . . [a] proceeding . . . under the

[the ADA]."  42 U.S.C. § 12203(a).

        The ADEA has a similar anti-retaliation provision which proscribes an employer

from discriminating against an employee who "has opposed any practice made unlawful by this

section, or because such individual . . . had made a charge . . . under [the ADEA]."  29 U.S.C. §

623(d).  The anti-retaliation provision under the PHRA is nearly identical.  42 Pa. C.S. §

955(d).

---

[9]      Historically, cases from the Third Circuit have often phrased this element as
        requiring "pervasive <u>and</u> regular" harassment.  However, our appellate court
        recently acknowledged that the difference between its own formulation of this
        element and that of the United States Supreme Court, which requires "severe <u>or</u>
        pervasive" harassment, is significant, and that the latter must control.  *See Jensen v.
        Potter*, 435 F.3d 444, 449 n.3 (3d Cir. 2006) (internal citations omitted).

Retaliation claims under the ADEA, ADA, and PHRA are analyzed in the same manner as retaliation claims under Title VII.  *See Fogleman v. Mercy Hospital, Inc.*, 293 F.3d 561, 567 (3d Cir. 2002); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (ADA and Title VII); *Barber v. CSX Dist. Svcs.*, 68 F.3d 694, 698 (3d Cir. 1995) (ADEA and Title VII).

"To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that: (1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment against [him]; and (3) there was a causal connection between [his] participation in the protected activity, and the adverse employment action."  *Moore v. City of Philadelphia*, -- F.3d ---, 2006 WL 2492256, at * 7 (3d Cir. 2006).

Plaintiff contends that being placed on two different PIPs constitutes an adverse action.   Defendants contend that placement on a PIP is not an adverse employment action.

The United States Supreme Court in *Burlington Northern & Safe Fe Railway v. White,* --- U.S.  ---, 126 S.Ct. 2405, 2414 (June 22, 2006), held that "[t]he scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harms."  The Supreme Court explained that a plaintiff claiming retaliation must show that a reasonable employee would have found the alleged retaliatory actions "materially adverse" in that they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* at 2415.

Assuming, *arguendo*, that placing Plaintiff on a PIP in March 2004 was an "adverse employment action," Plaintiff still is unable to establish his *prima facie* case of retaliation.  The summary judgment evidence establishes that Plaintiff was initially placed on a PIP in March

2004.  By Plaintiff's own admission, he had never complained about or voiced opposition to anyone at McKesson prior to that time about disability discrimination.  *Pl's Depo., at 144, 151*. Thus, Plaintiff did not engage in protected activity under the ADA prior to his initial placement on a PIP in March 2004 and, thus, has failed to establish his *prima facie* case of ADA retaliation.

Plaintiff testified that he complained about age discrimination in April or May 2003 and was placed on the PIP in March 2004, approximately ten months after he complained.  *Pl. Depo. at 212-213*.  Temporal proximity between protected activity and adverse employment action can establish a causal nexus, but such timing must be "unusually suggestive of retaliatory motive before a causal link can be inferred."  *Williams v. Philadelphia Hous. Auth. Police Dep't,* 380 F.3d 751, 760 (3d Cir. 2004).  Where the timing is not close, "timing plus other evidence" may be necessary.  *Williams,* 380 F.2d at 760.  Here, Plaintiff has only proffered the timing of the events to suggest a retaliatory motive.  The record is completely devoid of any "other evidence" to establish a retaliatory motive.  Thus, the Court concludes that Plaintiff has failed to meet his *prima facie* case of ADEA retaliation.

As to the 2005 PIP, Plaintiff claims that in January 2005, when he returned from his medical leave of absence (which did not involve his epilepsy), and after he filed his charge with the EEOC (April 2004), he experienced retaliation in the form of a more stringent PIP.  The undisputed record evidence reflects that Plaintiff was placed on PIP in March 2004 and completed only half of the 2004 PIP before going on medical leave; when he returned in January 2005, the McKesson workflow had changed and his 2004 PIP had to be altered to reflect the revised workflow.  The record is completely void of any evidence from which a

reasonable factfinder could conclude that the 2005 PIP was more stringent as a result of any alleged retaliatory action committed by Defendants.

Accordingly, summary judgment will be granted to Defendants on Plaintiffs' claims of retaliation under the ADA, ADEA and PHRA.

### Conclusion

Viewing the facts in the light most favorable to Plaintiff, the Court finds that he has failed to establish a *prima facie* case of disability or age discrimination under the ADA, ADEA, or PHRA.  In the alternative, the Court finds that Plaintiff has presented no evidence to create a genuine issue of material fact regarding the credibility of Defendant's legitimate non-discriminatory reasons for placing Plaintiff on a PIP.

Furthermore, the Court finds that Plaintiff has failed to establish a *prima facie* case of retaliation under the ADA, ADEA, or PHRA.  Accordingly, summary judgment will be granted as to Plaintiff's claims of disability and age retaliation.

An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TIMOTHY H. STERLING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 04cv1470 |
| | ) | |
| McKESSON AUTOMATION, INC., | ) | |
| McKESSON CORPORATION, JIM | ) | |
| STRINGER, RYAN PAYNE, KAREN | ) | |
| BOJARSKI, CHRISTIAN KEBEKUS, AND | ) | |
| PHIL SPANO, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER OF COURT**

AND NOW, this 26th day of September, 2006, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that the

Motion for Summary Judgment filed by Defendants is **GRANTED** in its entirety and judgment

is hereby entered in favor of Defendants, McKesson Automation, Inc., McKesson Corporation,

Jim Stringer, Ryan Payne, Karen Bojarski, Christian Kebekus, and Phil Spano.

The clerk is ordered to docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:     Lois E. Glanby, Esquire
        Email: attorneyglanby@aol.com

        Terrence H. Murphy, Esquire
        Buchanan Ingersoll & Rooney PC
        Email: thmurphy@klettrooney.com